UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JERMAINE CARPENTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 13-3234 |
| | ) |
| SCHUYLER COUNTY, *et al.* | ) |
| | ) |
| Defendants. | ) |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff Carpenter, along with three other plaintiffs, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging Fourteenth Amendment due process violations. Throughout the course of this litigation, the other three plaintiffs have been dismissed from this lawsuit and only Plaintiff Carpenter remains an active litigant. The matter is before the Court for ruling on the Defendants' respective motions for summary judgment. (Docs. 82, 91).

## PRELIMINARY MATTERS

Defendants Caraway and Jumper filed their motion for summary judgment on February 24, 2015. (Doc. 82). Defendants

Clayton, McAdory, and Williams filed their motion for summary judgment on May 27, 2015. (Doc. 91). After several extensions of time to do so, Plaintiff filed a response to the motion filed by Defendants Clayton, McAdory, and Williams. (Doc. 103). Plaintiff has not filed a response to the motion filed by Defendants Caraway and Jumper. Because many of the undisputed facts alleged in the Defendants' respective motions are similar, the Court will consider Plaintiff's responses to those facts as applicable to both motions. To the extent that Plaintiff does not address a fact alleged in the motion filed by Defendants Caraway and Jumper, the Court will consider the fact as undisputed pursuant to Rule 56 of the Federal Rules of Civil Procedure. See FED. R. CIV. P. 56(e)(2) (if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion).

In addition, Defendant Ashby is currently an active defendant in this matter, but neither party has filed a motion for summary judgment as it relates to him. Upon review of the Complaint, the only allegations against Defendant Ashby relate to the claims made by Plaintiff Terry C. Johnson. As Plaintiff Johnson's motion to voluntarily dismiss himself (and his complaint) was granted in the

Court's Text Order dated June 13, 2014, there are no remaining allegations against Defendant Ashby.  Defendant Ashby should have been dismissed at that time.  Plaintiff Carpenter, the sole remaining plaintiff in this matter, confirms in his deposition testimony that he has no claims against Defendant Ashby.  Pl. Dep. 122:13-123:8.  Therefore, pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, Defendant Ashby is dismissed.  See FED. R. CIV. P. 60(a) (the court, on its own motion, may correct mistakes arising from oversight or omission whenever one is found in the record).

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor.  Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be

more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff Carpenter ("Plaintiff") is civilly committed at Rushville Treatment and Detention Facility ("Rushville" or "TDF") pursuant to the Illinois Sexually Violent Persons Commitment Act. Defendants are or were employed at the TDF in various capacities. Plaintiff's remaining claims against the Defendants relate to Plaintiff's placement and status within the TDF from May 28, 2011 until July 27, 2011. All other claims were dismissed in the Court's Merit Review Opinion entered October 17, 2013. (Doc. 12).

On May 28, 2011, Plaintiff was placed on Temporary Special Management status pending an investigation regarding his alleged threats of physical harm (stabbing) towards staff. This action was based upon information from an incident report authored by a TDF official who is not a defendant in this action. Temporary Special

Management status ("Temp Special") is the most restrictive resident status at Rushville and is required when a resident is perceived as a threat to himself or others.  Plaintiff was provided a mattress, blanket, pillow, socks, boxers, soap, a shirt, and a jumpsuit.  The room was similar in size to his previous living quarters.  According to Plaintiff, he was initially allowed out of this room only for showers every three days.  Pl. Dep. 39:3-6.

Between May 28, 2011, and July 27, 2011, Plaintiff appeared before the Behavioral Committee ("Committee") on at least 11, but possibly 18 separate occasions.  As it relates to Plaintiff, Defendants Caraway and Jumper served on the Committee during various times throughout the relevant time period.

Plaintiff first appeared before the Committee on June 7, 2011, after two appearances within that first week had been postponed pending investigation into Plaintiff's alleged threats.  This hearing was continued because Plaintiff was in possession of contraband (ink pens).  Plaintiff disputes the classification of the pens as such, but admits he knew he was not supposed to have them.  At any rate, the Committee found Plaintiff guilty of "Threats and Intimidation" on June 13, 2011, for the events occurring prior to

May 28, 2011.  Prior to these hearings, Plaintiff received adequate notice of the hearings, an opportunity to identify witnesses, and an opportunity to present a statement in his defense.

After the guilty finding, Plaintiff was placed on a modified version of Special Management status.  Generally speaking, Special Management status is less restrictive than Temp Special and includes increased privileges such as yard time and access to the day room.  Pl. Dep. 46:19-21.  Under the modified version, Plaintiff was to be allowed these additional privileges based upon his compliance with TDF rules.

From the record, it does not appear that Plaintiff earned any additional privileges until July 15, 2011, when he was allowed to possess reading material and use the day room three times per week.  Until that time, Plaintiff's compliance had been continuously monitored and, on at least one occasion, a homemade "pool ball" (an item made by peeling caulk of the window frame) was found in Plaintiff's possession.  Despite this misstep, Plaintiff continued to comply with the requirements of the program.  He earned additional time in the day room on July 15 and 19, 2011, respectively, as well as the ability to wear his personal clothing on July 25, 2011.

Plaintiff was removed from the modified Special Management status on July 27, 2011. In his deposition, Plaintiff admitted that the privileges he was allowed went above and beyond the minimal requirements of TDF policy. Pl. Dep. 79:9-15.

## ANALYSIS

Plaintiff has a liberty interest in remaining free from unreasonable restraint. Youngberg v. Romeo, 457 U.S. 307, 316 (1982). A person already confined, however, may not create a federal claim "by citing small, incremental deprivations of physical freedom." Thielman v. Leean, 282 F.3d 478, 484 (7th Cir. 2002). Instead, Plaintiff's liberty interest is balanced against the ordinary incidents of his confinement. Id. Only those restrictions that impose an "atypical and significant hardship" will trigger due process concerns. Sandin v. Conner, 515 U.S. 472, 484 (1995); Miller v. Dobier, 634 F.3d 412, 415 (7th Cir. 2011) ("Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause.").

At its most restrictive, Plaintiff's confinement required that he stay inside his room for most of the day. He was provided basic

items (mattress, blanket, clothing, soap, etc.) and allowed to shower every three days. According to Plaintiff, his room did not have electrical outlets, and Plaintiff, therefore, would not have been able to use various electronic items even if they had been allowed.

As time progressed, Plaintiff was allowed greater privileges based upon his behavior and compliance with TDF rules. Plaintiff was allowed increased time outside his cell, yard time, and some limited property. The Behavioral Committee monitored Plaintiff's compliance with this program on a continuous basis, and there is no evidence that TDF officials took these actions for any reasons other than the safety and security of those housed and employed at the Rushville facility. On this record, the no reasonable juror could conclude that Plaintiff suffered an atypical and significant deprivation.

Even if Plaintiff could show a sufficient deprivation, there is no evidence that he was denied his procedural due process rights. Plaintiff was provided with sufficient notice of a disciplinary hearing and an opportunity to be heard in front of the Behavioral Committee. Rushville officials provided that hearing within a reasonable timeframe given the allegations against Plaintiff, his

possession of contraband while on Temp Special, and the pending investigation. See Holly v. Woolfolk, 415 F.3d 678, 681 (7th Cir. 2005) ("[D]ue process was satisfied by providing process 'within a reasonable time after confining [the inmate] to administrative segregation." (quoting Hewitt v. Helms, 459 U.S. 460, 472 (1983)).

There is no evidence to suggest that the Committee intended Plaintiff's more restrictive confinement to last indefinitely. To the contrary, the Committee conducted hearings every few days for the time that Plaintiff was housed in the Special Management wing and continuously evaluated Plaintiff's situation with the intention of restoring his less restrictive status.

Therefore, the Court concludes that no reasonable juror could find that Plaintiff's constitutional rights were violated. As such, the Defendants are entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motions for Summary Judgment are GRANTED [82][91]. The clerk of the court is directed to enter judgment in favor of the Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the**

**entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:      September 22, 2015

FOR THE COURT:

_s/ Sue E. Myerscough_
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
